G. A. PEHRSON, Appellant,

v.

C. B. LAUCH CONSTRUCTION CO.,
a Corporation, Appellee.

No. 14933.

United States Court of Appeals
Ninth Circuit.

Oct. 9, 1956.

James G. Towles, Kellogg, Idaho, Frank Funkhouser, Spokane, Wash., for appellant.

John D. MacGillivray, Spokane, Wash., Hawkins & Miller, Coeur d'Alene, Idaho, for appellee.

Before MATHEWS, BONE and CHAMBERS, Circuit Judges.

BONE, Circuit Judge.

Appellant appeals from judgment rendered upon a jury verdict for the appellee, and from the denial of his motion for a new trial. His complaint alleged that appellee failed to use reasonable care to make and maintain the premises safe for appellant to inspect the construction work below referred to.

Appellant is a resident of Spokane, Washington. At the time he received the personal injuries which were the basis of the instant action, appellant was engaged in performing work under employment by School District No. 82, Bonner County, Idaho. The pleadings of the parties show that he had been employed by this School District as an architect to prepare plans and specifications for a school building it planned to erect, and to supervise the construction for the purpose of seeing that it conformed with the plans and specifications. Appellee, an Idaho Corporation, had contracted with this School District to build this building.

On September 12, 1952 appellant and a school board member, Mr. Hirst, were

inspecting the work and Hirst requested appellant to inspect the roof to see that it was being laid according to contract terms. To reach the roof it was necessary to use a sixteen foot ladder which rested against a ledge or canopy over the main entrance of the school building. This canopy extended about three feet out from the wall of the building. To get from the canopy or ledge to the roof it was necessary to pass over a three foot eight inch parapet wall. Several workmen testified that the usual procedure was to climb the ladder, step off from it onto the three foot canopy, and then step over the parapet wall to the roof.

At the time in question appellant reached the top of the ladder and while standing on the second rung from the top of the ladder grasped the parapet wall top by his left hand, and placed his right knee onto the concrete canopy. In this process the ladder began to move slowly to his left, he lost his hold of the parapet wall, and fell to the ground, a distance of approximately fifteen feet four inches.[1] At the point where he struck the ground it was littered with rubbish, some broken boards and some broken concrete blocks. He suffered severe injuries and pain which, according to medical testimony will be permanent.

The first specification of error is that the Court erred in striking from appellant's complaint certain allegations relating to waste material and rubbish about the base of the ladder. He had alleged negligence and carelessness on the part of appellee in failing to keep the premises free from accumulations of waste material and rubbish, particularly in and about the base of said ladder, during the progress of the work. During presentation of the appellee's case, the court excused the jury for a moment and *sua sponte* struck from the complaint the allegations regarding rubbish and waste material lying about the base of the ladder.[2] When the jury was recalled the trial judge informed the jury of his

1. Appellant's testimony shows that appellant had used the same ladder in getting up to the roof at the same place on ten to fourteen previous occasions. He testified that when he started up the ladder at the time he was injured he did not know whether both legs of the ladder were resting solidly on the ground; that it was usual in his work to "take chances" that they might or might not be on the ground and that this was "what we usually do" and what he "probably did"; that he had also taken the chance on the ladder top resting securely against the wall without knowing it to be a fact and had taken this same chance many times before, and had done it again on this occasion.

Appellant further testified that he could have taken precautions to see that the ladder standards were set level and solidly on the ground but did not do so, and that this was "one of the chances we have to take"; that he did not check the top of the ladder to see if both standards were set securely against the wall of the building; and that he knew from fifty years experience in construction work what danger was entailed in using the means he did to get to the roof every time he had gone up that way. As we later point out, the issue of contributory negligence was submitted to the jury in the instructions. The facts in evidence made plain the manner in which the accident occurred, and it was for the jury to say whether under all of the circumstances appellant was himself guilty of negligence which would bar recovery.

2. The Court: "* * * I am striking from the complaint any allegation of negligence on account of the accumulation of waste material and rubbish, particularly in the area and about the base of the ladder. There is no evidence to show that this accumulation had not been properly handled by the contractor. In other words, there is no evidence to show that it was there for any length of time or that anyone had any knowledge of its remaining there for any length of time at all." When the jury returned, the trial judge repeated his statements to them, "* * * there is no evidence to show that the rubbish had not been promptly and properly removed after its accumulation, and there is no evidence to show that this had been here for any length of time except just the ordinary length of time that it would accumulate, and that leaves the matter entirely in connection with the ladder. I just wanted to advise counsel and the jury that I had taken that out of the pleadings."

action. The record shows the counsel for appellant was present when the ruling was made and tendered no objection thereto.

While in his brief on appeal appellant assigns this ruling as error his comment to us is merely that he cannot understand why the lower court struck the allegation. His motion for a new trial was based on two specifically noted claims, viz., insufficiency of the evidence to justify the jury's verdict, and errors of law occurring at trial and "excepted" to by the plaintiff.

Assuming arguendo that striking this allegation from the complaint might have been error, counsel did not deem it of sufficient importance to his case to object to the action of the court or to designate it specifically as one of the bases of his demand for a new trial. We think the specification of error is not properly before us. Mitchell v. Atwood, 1935, 55 Idaho 772, 47 P.2d 680; Koch v. Elkins, 1950, 71 Idaho 50, 225 P.2d 457; Fed. Rules Civ.Proc. Rule 46, 28 U.S.C.A.; Capella v. Zurich General Acc. Liability Ins. Co., 5 Cir., 1952, 194 F.2d 558; Bucy v. Nevada Const. Co., 9 Cir., 1942, 125 F.2d 213, 218; 5 Moore's Federal Practice (2d Ed., 1951), pp. 1901–1905.

■ The second specification of error is that the Court erred in refusing to admit appellant's exhibit Number 11. This proposed exhibit was a certified copy of a pamphlet containing the Idaho Minimum Safety Standards and Practices for the Building and Construction Industry —Code No. 2, adopted September 15, 1947, by the Industrial Accident Board of the State of Idaho. Appellee objected to introduction of this exhibit. The Court made no definite ruling at the time, but took the matter under advisement, though he indicated that he thought it was a subject matter of which

he would take judicial notice and that it need not be offered in evidence. Later he refused its admission.[3]

Idaho Code, § 72–1101 authorizes the Industrial Accident Board " * * * to adopt reasonable minimum safety standards * * *." Idaho Code, § 9–101 provides in part, "Courts take judicial notice of the following facts: * * * 2. Whatever is established by law." Idaho courts have taken judicial notice of regulations of federal departments made pursuant to acts of Congress, State ex rel. Taylor v. Taylor, 1938, 58 Idaho 656, 78 P.2d 125 (regulations adopted by Secretary of Agriculture); McFall v. Arkoosh, 1923, 37 Idaho 243, 215 P. 978 (regulations adopted by Secretary of Agriculture); and Idaho courts take judicial notice of reports of state officials and state government departments, Alberthesen v. State of Idaho, 1939, 60 Idaho 715, 96 P.2d 437 (Treasurer's Report and Auditor's Report); Ineas v. Union Pac. R. Co., 1952, 72 Idaho 390, 241 P.2d 1178 (Idaho Motorist's Guide). Minimum safety standards appear to have the force and effect of law. Appellant so contends. We believe that under the Idaho statutes and cases cited the trial court could and would take judicial notice of the Idaho minimum safety standards, if they were applicable in this case, and that it was not error to refuse admission of appellant's proposed exhibit No. 11.

■ Appellant assigns error by the Court in not permitting School Director Hirst (who preceded plaintiff up the ladder) to testify. The morning after appellant closed his case he sought to reopen his case to present the testimony of Hirst, who had just returned from a trip to Arizona. The Court refused to reopen the case. It is within the discretion of the trial judge to refuse to re-

---

3. The Court: "I will take judicial notice of this book, and I will not admit it in evidence. I will take judicial notice to it as a part of the law of this state and I will give it to Counsel so that they can point out to me any part of it that they think is material to this case. You may take the book with you tonight and make me a little memorandum of the sections of the book that you think are material in this case." Mr. Towles (Counsel for appellant): "I think it is all contained in one of the instructions that I have handed to your Honor."

open a case after a party has rested. Giffen v. City of Lewiston, 1898, 6 Idaho 231, 247, 55 P. 545, 551; Froman v. First Nat. Bank of Weiser, 1922, 35 Idaho 10, 204 P. 145; Silkey v. Tiegs, 1931, 51 Idaho 344, 5 P.2d 1049; Hall v. Jensen, 1908, 14 Idaho 165, 93 P. 962; Gardner v. United States, 9 Cir., 1934, 71 F.2d 63, 64, certiorari denied, 1934, 293 U.S. 619, 55 S.Ct. 213, 79 L.Ed. 707; Postal Telegraph-Cable Co. of Washington v. Northern Pac. Ry. Co., 9 Cir., 1914, 211 F. 824; The Philadelphia & Trenton Railroad Co. v. Stimpson, 1840, 14 Pet. 448, 10 L.Ed. 535. An appellate court will not disturb the action of the trial court in the exercise of discretion unless it is apparent that there has been an abuse of discretion. Pease v. Kootenai County, 1901, 7 Idaho 731, 65 P. 432; Hall v. Jensen, supra; Froman v. First Nat. Bank of Weiser, supra. We are unable to say that this amounted to an abuse of discretion.

No objection was taken to the instructions given by the court. They included an instruction carefully defining contributory negligence, an affirmative defense pleaded by appellee in its answer.

█ The final assignment of error is that the trial judge erred in refusing to give appellant's requested instructions numbers 2, 3, 4, 5, 6, 7, and 8. These proposed instructions dealt with the minimum safety standards set by the above cited code of the Idaho Industrial Accident Board and their claimed application to appellant, and in particular the code requirements that waste material and the like not be allowed to accumulate, and that the ladder must be placed on a solid footing and be securely tied or fastened if in danger of slipping or tipping. In short, the proposed instructions largely embodied the language, or substance

thereof, found in the Industrial Accident Board safety code.

Appellant contends that he came within the protection afforded by the minimum safety standards so set. No case is cited in the briefs and we have found none discussing the application of these minimum safety standards to an architect inspecting construction work for an employing school board. From a reading of the Idaho laws and court decisions we conclude that such an architect is not within the scope of protection of the minimum safety standards under this code.

The Idaho Workmen's Compensation Law, Idaho Code, § 72–1101 reads, in part: "The board [Industrial Accident Board] shall have the power, in addition to other powers herein granted * * * to adopt reasonable minimum safety standards and to make inspection in and about any place where workmen are employed." The Workmen's Compensation Law, Idaho Code, § 72–1011, defines "workman" in this manner: " 'Workman' is used as synonymous with 'employee' and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer. * * " Appellant does not contend, nor do the facts show, that he was at any time an employee or workman hired by appellee to work on this building job, and hence one of a group or class obviously coming within the beneficial terms of the statute above mentioned. The evidence makes plain that at all times here pertinent appellant was serving the School Board as its supervising architect, and in the performance of his duties as such was answerable only to the Board. Hence our conclusion above noted that the provisions of the minimum safety standards code were not applicable to appellant.

Appellant cites several Oregon cases [4]

4. Coomer v. Supple Inv. Co., 1929, 128 Or. 224, 274 P. 302, 303, has this to say: "The rule of law is well established in this state that an employer must exercise every care and precaution practical to use for the safety of life and limb of its employees and the public. Or.L. § 6785.

Said section is a part of the law known as the Employers' Liability Act (Or.L. §§ 6785–6791). The law requires an employer to exercise every reasonable care and precaution requisite to protect its employees *and others having a duty or a legal right to be on the premises of the*

arising under the Oregon Employers' Liability Law, ORS 654–305 et seq.[5] However a reading of the Oregon statute reveals a considerable difference in statutory language as compared with the Idaho Workmen's Compensation Law quoted above, authorizing adoption of minimum safety standards. Furthermore, in all the Oregon cases cited by appellant, the injured person was an employee and was so called by the court, and is so referred to in appellant's brief. This Court's opinion in C. D. Johnson Lbr. Corp. v. Hutchens, 9 Cir., 1952, 194 F.2d 574, 576, considered the leading Oregon cases and concluded that the Oregon law " * * * does not protect a person who has no employee relation to anyone engaged in the enterprise out of which the injury arose."

Appellant cites cases arising under a New York statute and the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the Federal Safety Appliance Act, 45 U.S.C.A. § 1 et seq., and the Federal Boiler Inspection Act, 45 U.S.C.A. § 22 et seq. The court in Osborne v. Salvation Army, 2 Cir., 1939, 107 F.2d 929, stated that the New York statute specifically embraced window-cleaners and that plaintiff, while cleaning windows, came within the statute. In Fort Street Union Depot Co. v. Hillen, 6 Cir., 1941, 119 F.2d 307, the deceased was a switchman; in Brady v. Terminal Railroad Association, 1938, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614, the injured plaintiff was employed as a car inspector; in Lilly v. Grand Trunk Western Railroad Co., 1942, 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411, the plaintiff was employed as a brakeman. We do not believe these cases, based upon statutes different from the Idaho statute, and involving workmen, are authority for the proposition that the Idaho law and the minimum safety standards are for the protection of appellant.

Several Idaho cases are cited by appellant. We have carefully read these cases and believe that they do not extend the protection of the minimum safety standards to appellant under the facts before us. Carron v. Guido, 1934, 54 Idaho 494, 501, 33 P.2d 345, 347, concerned the sale of ammunition to a minor without the consent of parents or guardians as required by statute, and the death of a minor as a result of the sale. The Idaho Supreme Court there said, "The violation of a law, intended for the protection of a person *and others like situated,* which results in his injury and is the proximate cause of it, is negligence per se." (Emphasis supplied.) In Curoe v. Spokane & Inland Empire Railroad, 1920, 32 Idaho 643, 647, 186 P. 1101, 1102, 37 A.L.R. 923, where fire spread from combustible material along appellant's right of way and spread to respondent's adjoining land, and where a statute made it a misdemeanor to let fire spread from a right of way to adjoining land, the court found the conduct of the railroad (appellant) " * * * a violation of law enacted for the protection of respondent, *and others like situated,* and constituted negligence * * *." (Emphasis supplied.)

The phrase "and others like situated" is ambiguous. No case is cited to us,

---

*employer from injury."* (Emphasis supplied.) Also, McKay v. Pacific Building Materials Co., 1937, 156 Or. 578, 68 P.2d 127; Pacific States Lumber Co. v. Bargar, 9 Cir., 1926, 10 F.2d 335.

5. ORS 654.305 reads, in part: "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes *or the public,* shall use every device, care and precaution which it is practicable to use for the safety of life and limb * * *." (Emphasis supplied.) Compare this Oregon Employers' Liability Statute with the

Idaho Employers' Liability Act, Idaho Code, § 44–1401, which reads, in part: "Every employer of labor in or about * * * any building which is being constructed * * * by the use and means of a scaffold, temporary staging, or ladders * * * shall be liable to *his employee or servant* for a personal injury received by such servant or employee in the service or business of the master or employer within this state when such employee or servant was at the time of the injury in the exercise of due care and diligence in the following cases * * *". (Emphasis supplied.)

274

and we have found none, which clarifies its meaning. Considering this phrase in connection with the Idaho Workmen's Compensation Law and its provisions for adoption of minimum safety standards for the protection of workmen (employees), we do not believe that the phrase "and others like situated" should be expanded in its meaning by us to include one in the status of appellant at the time of his injury. He was then a supervising architect for the School District and not an employee of appellee.

The judgment of the lower court is affirmed.