## C. D. JOHNSON LBR. CORP. v. HUTCHENS.

## HUTCHENS v. C. D. JOHNSON LBR. CORP.

### No. 12914.

United States Court of Appeals Ninth Circuit.

Feb. 5, 1952.

Rehearing Denied March 13, 1952.

James Arthur Powers, Norman N. Griffith, Portland, Or., for appellant.

William A. Babcock, Jr., E. U. Sims, Harry George, Jr., all of Portland, Or., for cross-appellant.

Before STEPHENS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

Plaintiff-appellee was the wife of Dean Hutchens who died on August 19, 1949. The marriage produced no children. Appellant, C. D. Johnson Lumber Corporation (hereafter referred to as Johnson) operated a sawmill at Toledo, Oregon. In connection therewith, Johnson maintained a dock and a log unloading dump on the Yaquina River. On August 19, 1949, deceased was the driver of a logging truck unloading logs at this dock. He was killed by being struck by a log as it was being unloaded from the truck.

Prior to the accident, Johnson and a third-party defendant, William R. Francis (hereafter called Francis), entered into a contract for the logging and delivery by Francis to Johnson at Toledo, Oregon of certain timber owned by Johnson. Pertinent provisions of that contract are set out below.

"(16) Logger [Francis] expressly agrees to indemnify and save Owner and Owner's property harmless of and from any and all debts, dues, claims, demands, liens, charges, or damages arising out of or connected with Logger's operations under this contract which may be asserted by any person, association, corporation, Federal government or any agency thereof, or state government or any political subdivision or agency thereof.

"(17) Logger shall accept the provisions of the Workmen's Compensation Act of the State of Oregon, and shall contribute to the Oregon Industrial Accident Fund for each and all of Logger's employees. Logger

shall have the option and privilege of providing insurance satisfactory to Owner in lieu of accepting said Workmen's Compensation Act and contributing to said Oregon Industrial Accident Fund."

After the death of Hutchens, appellee, as his widow, applied to the State Industrial Accident Commission of Oregon for death benefits provided by the Workmen's Compensation Law, O.C.L.A. § 102–1701 et seq., to the widow of an employee killed during the course of his employment. After a hearing an order was entered by the Commission rejecting the claim, "as there is no evidence that said deceased * * * was employed subject to the provisions of the Oregon Workmen's Compensation Law at the time of * * * his death." Appellee then commenced this action against appellant, and upon motion of the latter, the logging contractor (Francis) was joined as a third party defendant. On June 14, 1950, the court, on appellee's motion, ordered separate trials.

The jury trial resulted in a verdict in favor of appellee in the sum of $68,377.20. When appellant filed a motion for a new trial and judgment notwithstanding the verdict, the court in its memorandum opinion stated that it felt the verdict was excessive to the extent of $21,877.20, and ordered: "Therefore, if the plaintiff * * * shall * * * file a remittitur of that amount * * * the motions for a new trial and for a judgment notwithstanding the verdict will be denied * * * and a judgment based upon such verdict as reduced may be entered for the remaining sum of $46,500.00 with costs; but, if such remittitur be not so served and filed on or before December 20, 1950, the motion for a new trial will be allowed." Appellee filed her remittitur under protest, and judgment was entered in the sum of $46,500.00. Both parties have appealed therefrom.

The Oregon Employers' Liability Law, upon which appellee Hutchens relies in this action, has been, since its enactment in 1911, the subject of frequent, and sometimes variant, interpretation. The most fertile source of judicial discussion is O.C.L.A. § 102–1601, which, insofar as pertinent, appears below.[1] There, within the confines of a single sentence, some four hundred seventy-one (471) words are embraced. Statutes of this type suggest that legislative prolixity, rather than human cantankerousness, may be the mother of litigation.

Appellant's first two specifications of error really present a single question: Must a person be found to be an employee in order to come within the protective scope of the Act? The trial court answered this query negatively, in its instructions to the jury in these words:

"Your first inquiry therefore will be whether the work of the plaintiff's decedent —that is Dean Hutchens—was engaged at the time of the fatal accident involved risk or danger. If you find from a preponderance of the evidence that the work in which Dean Hutchens was engaged at the time and place of the fatal accident involved risk or danger, then he was entitled to the protection and benefits of the Oregon Employers' Liability Act; * * *."

"Mention has been made of the fact that Dean Hutchens was not employed by the defendant but by W. R. Francis, or that he was self-employed. In this connection I instruct you that his employment status and the contractual relation between Francis and Dean Hutchens, or between Francis and the defendant, in so far as any issue in this case is concerned is immaterial, and Dean Hutchens was or was not entitled to the benefits and protection of the Employers' Liability Act solely on the basis of whether the work which he was doing at

1. " * * * and generally, all owners, contractors or sub-contractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices. (L.1911, ch. 3 § 1, p. 16; O.L. § 6785; O.C.1930, § 49–1701)"

the time and the place of the accident involved risk or danger."

In addition to contending that the giving of the above quoted instruction constituted prejudicial error, appellant also specifies as error the court's refusal to give defendant's requested instruction No. XV, which reads as follows: "I instruct you that if you find from the evidence that the deceased was an independent contractor or an independent subcontractor that this particular action cannot be maintained by the plaintiff and your verdict would be for the defendant. This particular law is designed to apply to employees only and not to independent contractors."

■ In a case such as this, where a Federal court is exercising jurisdiction solely because of diversity of citizenship of the parties, we are obliged to apply the same rules in determining the legal issues involved as would be applied by the courts of Oregon. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Guaranty Trust Company of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

The pertinent portion of the Oregon Employers' Liability Act, hereafter called the Act, set forth supra, has been examined by the Supreme Court of Oregon many times during its forty-one years of existence. As is so frequently the case with such venerable statutes, it has been both cursed as ambiguous and lauded as explicit, by the Oregon court whose interpretation thereof we are now called upon to determine. As aptly observed by the brief of appellant, "There is no question that this act * * * is full of ambiguities which have had to be resolved by construction." It is, however, gratifying to learn from further reading of the briefs of parties, that (as appellant points out) "Now, however, the general pattern of interpretation of this unique Act has been established," and (as stated by appellee) "It is well established by a line of decisions * * *."

In Clayton v. Enterprise Electric Co., 1916, 82 Or. 149, 155, 161 P. 411, 413, the beneficent tendrils of the Act were held to embrace not only affairs between employer and employee, but also those who, in the performance of their duty, are liable to be exposed to the danger "even though such persons may not be in the immediate employ of such manufacturer or person * * *." Yet the Oregon court in Turnidge v. Thompson, 1918, 89 Or. 637, 653, 175 P. 281, 286, chastized itself for using, in the Clayton case, supra, "language more sweeping than was necessary", and then proceeded to distinguish its previous decision on the grounds that the deceased in the Clayton case was an employee of someone. Neither of the two cases just referred to furnishes an answer to the question before us, but they are mentioned only to provide an insight into the uncertain judicial environment which surrounded the Act in its infancy.

■■ A detailed analysis of all the Oregon cases compels the conclusion that the Act does not protect a person who has no employee relation to anyone engaged in the enterprise out of which the injury arose. Saylor v. Enterprise Electric Co., 1923, 106 Or. 421, 212 P. 477, 482. It is therefore imperative that the employment status of a claimant be determined. This the trial court refused to permit. Such refusal was prejudicial error.

The deceased in the Saylor case, supra, was killed by electricity when the hay derrick he was moving contacted an uninsulated power line maintained by the defendant. The victim was not an employee of any employer at the time of the accident. He was entering a county road—a public place —where he had a legal right to be at the time of his death. In holding for the defendant, the court reviewed the history of the Act, (which was made law by an initiative election) and concluded that the voters could receive no other impression than that the bill was designed to protect employees. "There is no room whatever for saying that the word 'employés' includes one who, though engaged in work, was not an employé of any person", said the court. See also Brady v. Oregon Lumber Co., 1926, 117 Or. 188, 243 P. 96, 45 A.L.R. 812. Even more narrow language was employed in Walters v. Dock Commission, 1928, 126 Or. 487, 245 P. 1117, 266 P. 634, 270 P. 778, where it was pointed out that the terms of

the Employers' Liability Act protect only employees whose duties require their presence at the scene of the accident.

Appellant suggests that a clear enunciation of the present law may be found in Helzer v. Wax, 1928, 127 Or. 427, 433, 272 P. 556. Because we too are impressed with its importance, it is well that its facts be briefly stated. The plaintiff was engaged in hauling garbage from residential and commercial locations, and had approximately one hundred fifty customers on his route. Among these customers was the defendant, who paid plaintiff $8.00 per month for removing his garbage. While so engaged plaintiff was injured when he fell down an open elevator shaft. Holding the plaintiff to be an independent contractor, the court stated that he was not entitled to the protection of the Act.

Rorvik v. North Pacific Lumber Co., 1920, 99 Or. 58, 190 P. 331, 195 P. 163, upon which appellee chiefly relies, was distinguished in the Helzer case, supra [127 Or. 427, 272 P. 558], in the following language:

"We come now to the problem whether section 6785, Or.C.L., which is a portion of the statute commonly referred to as the Employers' Liability Act, includes one who is an independent contractor. If employees only are protected by the requirements of the act, the plaintiff cannot recover; but, if an independent contractor, whose duties require their performance in an elevator shaft, or in the presence of an instrumentality which creates a risk, or danger, is also embraced within the protective features of the act, the plaintiff was possessed of a cause of action by virtue of it, if the requirements of the act were breached by the defendant.

"[3] It is well established that the plaintiff could not recover under the act by virtue of his status as a member of the public. Turnidge v. Thompson, 89 Or. 637, 175 P. 281; Malloy v. Marshall-Wells Hardware Co., 90 Or. 303, 173 P. 267, 175 P. 659, 176 P. 589; Saylor v. Enterprise Electric Co., 106 Or. 421, 212 P. 477; Brady v. Oregon Lumber Co., 117 Or. 188, 243 P. 96, 45 A.L.R. 812.

"We revert to the problem whether the foregoing circumstances accompanying his condition *as an independent contractor* place him in a more favorable situation. * * *

"* * * The distinction between that case [Rorvik] and the present lies in the fact that in the one the injured party was an employee, while in the present he is not. * * * If we are correct in our understanding that the purpose of the act was to protect only employees, counsel's argument loses its force when addressed to our ears. Our past decisions in expounding the meaning of the act make repeated use of the words 'employer' and 'employee,' and recovery has been uniformly confined to the latter. In Clayton v. Enterprise Electric Co., 82 Or. 149, 161 P. 411, the deceased was an employee. The decision, however, contains words that might make it seem recovery was upon a different basis. A recent case restricting the operation of the act to the employee class is Brady v. Oregon Lumber Co., 117 Or. 188, 243 P. 96, 45 A.L.R. 812." (Emphasis supplied.)

We agree with appellee that the decisions of the Oregon court indicate that the protection of the act is not confined only to employees *of the defendant.* As stated in McKay v. Pacific Building Materials Co., 1937, 156 Or. 578, 68 P.2d 127, the Act requires the employer to take required precautions, not only for protection of his own employees, but also for protection of employees of others whose duties bring them within the scope of the dangers of the employer's work. But in the McKay case, (as in every other case where the Oregon court has permitted recovery) the injured person was *an employee of someone.*

In the Pre-Trial order we find both parties stating, as an issue, the question of whether Dean Hutchens was an employee of Francis. Appellee there contended that the deceased was an employee of Francis. Appellant there maintained that Hutchens was an independent contractor. This question of status again appeared in the pretrial order and was urged as an issue under the sub-headings "Issues of Fact" and "Issues of Law." We cannot escape the conclusion that this matter of status was regarded as all-important. As explained

hereinbefore, our reading of the Oregon cases suggests that the parties viewed the instant suit in its proper light. Only the district court arrived at a different opinion.

We have previously indicated that in order to come within the scope of the Act it was necessary that Hutchens, at the time of the accident, be an *employee* of someone engaged in the enterprise out of which the injury arose. The instruction given by the trial court precluded any finding by the jury as to his then status. This was reversible error. We cannot speculate as to what conclusion the jury might have reached had it been presented with such a question.

Appellee Hutchens appealed from the judgment below insofar as it required a remittitur of a portion of the sum awarded her in the jury verdict. In view of our disposition of the case, this cross-appeal need not be considered.

The judgment is therefore reversed and the cause remanded for a new trial in accordance with the views here expressed.